**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

───────────────────────────

BRUCE WAYNE C.,

                                        Plaintiff,

            v.
                                                    No. 5:21-CV-160
COMMISSIONER OF SOCIAL SECURITY,                    (CFH)


                                        Defendant.

───────────────────────────


**APPEARANCES:**                        **OF COUNSEL:**

Law Offices of Kenneth Hiller, PLLC     JUSTIN M. GOLDSTEIN, ESQ.
600 North Bailey Avenue – Suite 1A      KENNETH R. HILLER, ESQ.
Amherst, New York 14226
Attorneys for plaintiff

Social Security Administration          TIMOTHY SEAN BOLEN, ESQ.
J.F.K. Federal Building,
15 New Sudbury Street, Room 625
Boston, Massachusetts 02203
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**


                    **MEMORANDUM-DECISION AND ORDER[1]**

        Bruce Wayne C.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("the

Commissioner") denying his applications for social security income and disability

─────────────────────

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 5.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff's last name by initial only.

insurance benefits.  See Dkt. No. 1 ("Compl.").  Plaintiff moves for reversal and remand

for the determination of benefits.  See Dkt. No. 14.  The Commissioner cross moves for

judgment on the pleadings.  See Dkt. No. 15.  For the following reasons, the

Commissioner's decision is affirmed.

## I. Background

On March 21, 2019, plaintiff filed Title II and Title XVI applications for disability

insurance and social security income benefits.  See T. at 261-76.[3]  Plaintiff alleged a

disability onset date of January 10, 2018.  See id. at 261.  The Social Security

Administration ("SSA") denied plaintiff's claims on May 28, 2019.  See id. at 146, 156.

Plaintiff sought reconsideration and his claims were again denied on June 28, 2019.

See id. at 174, 186.  Plaintiff requested a hearing, see id. at 200, and a hearing was

held on March 4, 2020, before Administrative Law Judge ("ALJ") Kenneth Theurer.  See

id. at 46-69.  On March 20, 2020, the ALJ issued an unfavorable decision.  See id. at

31-40.  On December 15, 2020, the Appeals Council denied plaintiff's request for

review.  See id. at 1-5.  Plaintiff timely commenced this action on February 10, 2021.

See Compl.

## II. Legal Standards

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.
See Dkt. No. 10.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand
corner of the page, not the pagination generated by CM/ECF.

**A. Standard of Review**

In reviewing a final decision of the Commissioner, a district court may not
determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g),
1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.
1990).  Rather, the Commissioner's determination will only be reversed if the correct
legal standards were not applied or it was not supported by substantial evidence.  See
Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d
464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning
that in the record one can find "such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d
Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal
citations omitted)).  The substantial evidence standard is "a very deferential standard of
review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a
reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin.,
Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (internal quotations marks,
citation, and emphasis omitted).  Where there is reasonable doubt as to whether the
Commissioner applied the proper legal standards, the decision should not be affirmed
even though the ultimate conclusion is arguably supported by substantial evidence.
See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817
F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding
is supported by substantial evidence, such finding must be sustained "even where
substantial evidence may support the plaintiff's position and despite that the court's

independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

### B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which

significantly limits his [or her] physical or mental ability to do
basic work activities.

If the claimant suffers such an impairment, the third inquiry is
whether, based solely on medical evidence, the claimant has
an impairment which is listed in Appendix 1 of the
regulations.  If the claimant has such an impairment, the
[Commissioner] will consider him [or her] disabled without
considering vocational factors such as age, education, and
work experience; the [Commissioner] presumes that a
claimant who is afflicted with a "listed" impairment is unable
to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment,
the fourth inquiry is whether, despite the claimant's severe
impairment, he [or she] has the residual functional capacity
to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past
work, the [Commissioner] then determines whether there is
other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-

disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas,

540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each

of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998)

(citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden

shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful

employment somewhere.  Id. (citing Berry, 675 F.2d at 467).

**III. The ALJ's Decision**

Applying the five-step disability sequential evaluation, the ALJ first determined

that plaintiff had not engaged in substantial gainful activity since January 10, 2018, the

alleged onset date.  See T. at 33.  At step two, the ALJ found that plaintiff had the

following severe impairments: "diabetes, obesity, osteoarthrosis, and ankylosing

spondylitis[.]"  Id. at 34.  At step three, the ALJ determined that plaintiff did not have an

impairment or combination of impairments that met or medically equaled the severity of

one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See id. at

34-35.  Before reaching step four, the ALJ concluded that plaintiff retained the residual

functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b)

and 416.967(b) except

> he can sit for up to six hours, total, and stand or walk for approximately six
> hours, total, in an eight-hour day, with normal breaks; he can occasionally
> climb ramps or climb stairs; he should never climb ladders, ropes or
> scaffolds; he can perform occasional balancing, stooping, kneeling,
> crouching, and crawling; and he can frequently, but not continuously,
> perform fine manipulation such as handling, fingering, and feeling,
> bilaterally.

Id. at 35-36.  At step four, the ALJ determined that plaintiff was unable to perform

relevant past work.  See id. at 38.  At step five, considering the plaintiff's age, education,

work experience, and RFC, the ALJ concluded that there were jobs that existed in

significant numbers in the national economy that plaintiff could perform.  See id. at 39-

40.  Thus, the ALJ determined that plaintiff had "not been under a disability, as defined

in the Social Security Act, from January 20, 2018, through the date of th[e] decision[.]"

Id. at 40.

## IV. Arguments[4]

Plaintiff argues that the Appeals Council erred in summarily denying review of the ALJ's unfavorable decision because plaintiff's newly submitted "evidence would have likely changed the outcome of the ALJ's decision" and the Appeals Council was required to explain why it found otherwise.  Dkt. No. 14 at 12.  Plaintiff also contends that the ALJ erred by failing to (1) develop the record; (2) "consider [p]laintiff's chronic abscesses as a medically determinable impairment at Step Two"; and (3) "to evaluate the skin disorder Listings at Step Three."  Id. at 20; 17-18.  The Commissioner argues that the Appeals Council appropriately denied review of the ALJ's unfavorable decision and that the ALJ's decision is supported by substantial evidence.  See Dkt. No. 15 at 2.

## V. Discussion

### A. Appeals Council

Plaintiff argues that the remand is required because the Appeals Council summarily denied review of the ALJ's decision without (1) providing any reasons as to why plaintiff's newly submitted evidence would not have changed the ALJ's decision, and (2) analyzing the opinion under the relevant regulations for examining medical opinions.  See Dkt. No. 14 at 11-16.  Plaintiff asserts that his primary care provider, Amanda L. Ray, D.O.'s, opinion would have likely changed the outcome of the ALJ's decision because her opined limitations were more restrictive than the ALJ's RFC determination.  See id. at 14.  The Commissioner argues that the Appeals Council was

---

[4] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF in the pages' headers.

correct in denying review because Dr. Ray's opinion would not have changed the outcome of the ALJ's decision as it is inconsistent with the other evidence, and she offered little explanation in the opinion.  See Dkt. No. 15 at 6-7.  Regardless, the Commissioner contends that the Appeals Council was not required to explain the reasons for its denial.  See id. at 11-15.

Plaintiff accurately asserts that "[c]ourts have consistently refused to accept the perfunctory and boilerplate reasoning from the Appeals Council that was provided in this case."  Dkt. No. 14 at 13 (citing Mendez v. Comm'r of Soc. Sec., 17-CV-6824 (CJS), 2019 WL 2482187, *5 (W.D.N.Y. June 14, 2019); Velez v. Berryhill, 3:18-CV-01024 (SALM), 2019 WL 2052013, at *7 (D. Conn. May 9, 2019)).  Plaintiff further contends that the Appeals Council was required to apply the amended regulations to Dr. Ray's opinion, relying on cases which "have held that under the old regulations, a treating physician's opinion submitted to the Appeals Council had to be evaluated under the Treating Physician Rule."  Dkt. No. 14 at 15 (citing Leah H. v. Comm'r of Soc. Sec., 3:20-CV-445 (CFH), 2021 WL 4033129, at *9 (N.D.N.Y. Sept. 3, 2021); Mark D. v. Comm'r of Soc. Sec., 6:20-CV-06392 (EAW), 2021 WL 4059326, at *3 (W.D.N.Y. Sept. 7, 2021); Patrick M. v. Saul, 3:18-CV-290 (ATB), 2019 WL 4071780, at *7 (N.D.N.Y. Aug. 28, 2019)).

As the Commissioner notes, Magistrate Judge Peebles has thoroughly addressed this issue in a recent case applying the treating physician rule.  See Jessica W. v. Saul, No. 5:19-CV-1427 (DEP), 2021 WL 797069, at *7 (N.D.N.Y. Mar. 2, 2021); see Dkt. No. 15 at 14-15.  In Jessica W., Judge Peebles explained that under the version of the regulations "in effect at the time [the] plaintiff's application was filed

provided that the agency 'will always give good reasons in [the] notice of *determination or decision* for the weight [given] to your treating source's medical opinion.'" Jessica W., 2021 WL 797069, at *8 (quoting 20 C.F.R. § 416.927(c)(2)).  Judge Peebles concluded that the Appeals Council was not required to apply the treating physician rule and provide "good reasons" for its denial of review because

> [u]nder the agency's procedures, an Appeals Council's denial of a plaintiff's request for review is neither a "determination" nor a "decision." When a plaintiff seeks review by the Appeals Council, that body "may deny, or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to the [ALJ]." 20 C.F.R. § 416.1467.  As can be seen, the regulation itself explicitly provides that only when the request to review is granted does the Appeals Council issue a "decision."  *Id.*; *see also* 20 C.F.R. § 416.1481 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision.").

Id.  To be sure, Judge Peebles addressed the line of district court cases within this Circuit that have held otherwise—that the Appeals Council is required to explain its reasons for rejecting a treating physician's opinion when it denies review.  See id. at 7. He surmised that "[t]he apparent genesis of the line of cases . . . finding such an obligation appears to be a magistrate judge's report and recommendation in *Shrack v. Astrue*, 608 F. Supp. 2d 297 (D. Conn. 2009) . . . ."  Id.  In Shrack, "[a]lthough the Appeals Council identified the additional new evidence[, which included opinions of a treating physician,] it did not specifically address any of it in its decision denying review, instead stating that '[it] found no reason under [its] rules to review the [ALJ]'s decision.'" Jessica W., 2021 WL 797069, at *8 (quoting Shrack, 608 F. Supp. 2d at 302).  "Citing to *Snell v. Apfel*, 177 F.3d 128 (2d Cir. 1999), the magistrate judge [in Shrack] issued the sweeping proclamation that 'the treating physician rule applies to the Appeals Council when the new evidence at issue reflects the findings and opinions of a treating

9

physician.'" Id. (quoting Shrack, 608 F. Supp. 2d at 302).  However, a distinction

seemingly overlooked by the Court in Shrack is that in Snell, "rather than merely

denying review of an ALJ decision, the Appeals Council addressed the merits of the

matter *sua sponte*, and reversed the decision of the ALJ to grant benefits."  Jessica W.,

2021 WL 797069, at *8 (citing Snell, 177 F.3d at 129-30).  In Snell, "the Appeals Council

proactively considered the record and issued a merits-based decision and, in doing so,

was plainly obligated to apply the treating source rule, just as an ALJ must when making

an initial determination."  Id. (citing Snell, 177 F.3d at 133).  The Appeals Council's

actions in Snell were different from the actions taken in Shrack where the "Appeals

Council simply denie[d] review, [and] the focus for a reviewing court [wa]s upon the

ALJ's decision, which represents the final determination of the agency. . . ."  Id. (citing

20 C.F.R. § 416.1481; Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)).

In explaining the distinction between an Appeals Council denial and decision,

Judge Peebles relied on Vallejo v. Berryhill, in which the Tenth Circuit held that because

the Appeals Council "simply denied review . . . it was not required to follow the same

rules for considering opinion evidence as the ALJ followed[.]"  849 F.3d 951, 955-56

(10th Cir. 2017); see Jessica W., 2021 WL 797069, at *8.  The Tenth Circuit explained

that although "an express analysis from the Appeals Council would be helpful to judicial

review . . . 'nothing in the statutes or regulations' requires the Appeals Council to

provide that analysis."  Vallejo, 849 F.3d at 956 (quoting Martinez v. Barnhart, 444 F.3d

1201 (10th Cir. 2006)).  Therefore, relying on the text of the regulations and agreeing

with the Tenth Circuit's rationale, Judge Peebles held that Shrack "was wrongly

decided" and "when the Appeals Council merely denies a request for review of a

determination, it is under no obligations to explain the weigh to a treating source opinion submitted as new evidence following an ALJ's decision." Jessica W., 2021 WL 797069, at *8-9.  The Court agrees with Judge Peebles sound analysis and subsequent holding and adds the following for support.

In addition to the Tenth Circuit, the First, Fourth, Fifth, Seventh, Eighth, Ninth, and Eleventh Circuits similarly distinguish the articulation requirements for the Appeals Council denying review versus it issuing a decision.  See Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001) ("It is quite true that an Appeals Council decision refusing review has all the hallmarks of a discretionary decision: the Appeals Council need not and often does not give reasons, and the regulations appear to provide the Appeals Council with a great deal of latitude in deciding which cases should be reviewed."); Sun v. Colvin, 793 F.3d 502, 511 (5th Cir. 2015) ("The regulations do not require the AC to provide a discussion of the newly submitted evidence or give reasons for denying review."); Damato v. Sullivan, 945 F.2d 982, 988 (7th Cir. 1991) ("[W]e hold infra, the district court did not abuse its discretion in finding that the Appeals Council may deny review of an administrative law judge's decision without articulating its reasons."); Skipper v. Astrue, 471 F. App'x 558, 559 (8th Cir. 2012) (citing Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir.1992) ("rejecting appellant's assertion that when Appeals Council denies review, it must make its own findings and articulate its own assessment of new evidence")); Gomez v. Chater, 74 F.3d 967, 972 (9th Cir.1996) (superseded by regulation on other grounds as stated in Hudson v. Astrue, No. 11-CV-0025 (CI), 2012 WL 5328786, at *4, n.4 (E.D. Wash. Oct. 29, 2012)) ("[I]n rejecting [newly submitted] evidence, the Appeals Council is not required to make any particular evidentiary

finding."); Mitchell v. Comm'r, Soc. Sec. Admin., 771 F.3d 780, 784-785 (11th Cir. 2014) (collecting cases from the Fourth, Fifth, Seventh, Ninth, and Tenth Circuits in support) ("The Appeals Council, moreover, was not required to provide a detailed rationale for denying review.  We note that our conclusion that the Appeals Council is not required to explain its rationale for denying a request for review is consistent with the holdings of other circuits that have considered this issue.").[5]

The SSA's policies also help explain the Appeals Council's use of the "boilerplate" language that plaintiff presently challenges.  Dkt. No. 14 at 13.  "Prior to July 20, 1995, the Appeals Council (AC) required analysts to respond directly to the issue(s) raised in contentions.  However, due to workload concerns and resource issues, the AC implemented a new initiative on July 20, 1995, suspending the requirement to provide a detailed discussion of additional evidence and provide specific responses to contentions in the denial notice."  HALLEX I-3-5-15, Consideration of Legal Arguments Or Contentions, (S.S.A.), 2015 WL 3921874, at *1.  In its July 20, 1995, memorandum, the SSA provided the Appeals Council with "temporary paragraphs" to use in "denial notices."  HALLEX I-3-5-90, Exhibit - Memorandum Dated July 20, 1995, Subject: the Request For Review Workload, From the Executive Director, Office of Appellate Operations, (S.S.A.), 2001 WL 34096367, at *1.[6]  Specifically, if a

---

[5] The Third and Sixth Circuits have held that the when the Appeals Council denies review, the Court must look only to the ALJ's decision as the final decision of the Commissioner.  See Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001) ("No statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review."); Meeks v. Sec'y of Health & Hum. Servs., 996 F.2d 1215, 1993 WL 216530, at *1 (6th Cir. 1993) (Table) ("An Appeals Council order denying review is not, however, a reviewable order; such an order serves only to make the decision of the ALJ the final reviewable decision of the Secretary.").

[6] The memorandum stated, "[e]ffective immediately, we are temporarily suspending the requirement for a detailed discussion of additional evidence and for specific responses to contentions in denial notices. Please note that this change does not in any way lessen the analyst's responsibility to consider the evidence and contentions and to make an appropriate recommendation to the Administrative Appeals

claimant submitted additional evidence to the Appeals Council, it was advised to state

that "[t]he Appeals Council has also considered the additional evidence from

(a)_____ dated (b) _____, but concluded that this additional

evidence does not provide a basis for changing the Administrative Law Judge's

decision." Id.

        "In 2012, the [Appeals Council] officially adopted this initiative[]" and, therefore,

continued the use of its "temporary paragraphs[.]"  HALLEX I-3-5-15, 2015 WL

3921874, at *1.  Of course, "[t]he HALLEX is a manual that provides the Social Security

Administration with a set of guidelines and procedures" and "district courts within the

Second Circuit have found that 'HALLEX policies are not regulations and therefore not

deserving of controlling weight.'"  Michelle W. v. Comm'r of Soc. Sec., No. 3:20-CV-707

(CFH), 2021 WL 4972934, at *10 (N.D.N.Y. Oct. 26, 2021) (quoting Dority v. Comm'r of

Soc. Sec., No. 14-cv-0285, 2015 WL 5919947, at *5 (N.D.N.Y. Sept. 15, 2015))

(additional citations omitted).  Although the HALLEX is not binding on this Court's

analysis, it is instructive and explains why the Appeals Council has continued to use its

"boilerplate" language.  Dkt. No. 14 at 13.

        Unlike Jessica W., the applicable regulations to plaintiff's case do not utilize the

treating physician, but instead rely on the amended regulations for claims filed on or

after March 27, 2017.  See Jessica W.,  2021 WL 797069, at *6; 20 C.F.R.

§§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2).  Plaintiff argues that the Appeals Council

---

Judge.  It does mean that any required analysis can be included in the less formal setting of the
recommendation, saving the time it would take to compose, edit and perhaps revise more formal
language in the notice itself.  The evidence and briefs, etc. must still be identified and/or acknowledged
and we have developed the attached paragraphs, which are available as macros, for that purpose."
HALLEX I-3-5-90.  Exhibit - Memorandum Dated July 20, 1995, Subject: the Request For Review
Workload, From the Executive Director, Office of Appellate Operations, (S.S.A.), 2001 WL 34096367, at
*1.

was required to apply the amended regulations to Dr. Ray's opinion. See Dkt. No. 14 at 15-17. Plaintiff relies on a case from this Court in which remand was ordered because the Appeals Council did not analyze the persuasiveness of a newly submitted opinion "under the applicable regulations and there is a reasonable probability that the opinion would change the outcome of the decision[.]" Devra B. B. v. Comm'r of Soc. Sec., No. 6:20-CV-00643 (BKS), 2021 WL 4168529, at *8 (N.D.N.Y. Sept. 14, 2021). Devra B.B. is distinguishable as the Court remanded because the Appeals Council denied review based on the erroneous assertion that the "additional evidence does not relate to the period at issue[]"—whereas here, the Appeals Council denied review because it found that Dr. Ray's opinion would not have changed the ALJ's decision. Id. at *6; see T. at 1.

Further, in determining that the Appeals Court must apply the amended regulations when reviewing a newly submitted opinion, Devra relied on Patrick M. v. Saul, No. 3:18-CV-290 (ATB), 2019 WL 4071780, at *7 (N.D.N.Y. Aug. 28, 2019), Howard D. v. Saul, No. 5:19-CV-1615 (BKS), 2021 WL 1152834, at *14 (N.D.N.Y. Mar. 26, 2021), and Lesterhuis v. Colvin, 805 F.3d 83, 89 (2d Cir. 2015) (per curiam). As Judge Peebles explained in Jessica W., Lesterhuis expressly declined to address whether the Appeals Council had an independent duty to explain why a treating physician's opinion was given less than controlling weight. See Jessica W., 2021 WL 797069, at *7 (citing Lesterhuis, 805 F.3d at 89). Further, Patrick M. and Howard D. rely on the same line of cases that Judge Peebles dispelled in Jessica W., as they stem from a misreading and misapplication of Snell in Shrack. See Howard D., 2021 WL 1152834, at *14 (remanding because "the Appeals Council's decision only reflects an acknowledgement of the evidence and denial of review, and does not reflect that the

Appeals Council analyzed the opinion under the new regulations."); Patrick M., 2019 WL 4071780, at *7 ("In the absence of clear Second Circuit authority to the contrary, this Court will continue to hold that the Appeals Council must articulate good reason for not following treating physician evidence, even when it denies review.").

In the regulations applicable to plaintiff's claims, the SSA has stated that "[w]e will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b).  The SSA defines "[w]e or us mean[ing], as appropriate, either the Social Security Administration or the State agency making the disability or blindness determination." 20 C.F.R. § 404.1502(j).  The SSA defines "determination" as "the initial determination or the reconsidered determination." 20 C.F.R. § 416.1401.  In denying review, the Appeals Council is not making the initial or reconsideration disability determination; therefore, it is not a part of the "we" and is not required to "articulate" the persuasiveness of a newly submitted medical opinion.  20 C.F.R. § 404.1520c(b).

The regulations clearly state that "[t]he Appeals Council may deny a party's request for review or it may decide to review a case and make a decision." 20 C.F.R. § 416.1481 (emphasis added); see also 20 C.F.R. § 416.1467 (emphasis added) ("The Appeals Council may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to an administrative law judge.").  The regulations do not require the Appeals Council to issue a decision when it denies a request for review.  See id.; see Jessica, 2021 WL 797069, at *8 ("As can be seen, the regulation itself explicitly provides that only when the request to review is granted does the Appeals Council issue a 'decision.'").  Considering the regulatory distinction

between a denial and decision and the vast majority of Circuit Courts which acknowledge and follow that regulatory distinction, as well as <u>Snell</u>'s distinguishable circumstances, the Appeals Council was not required to explain its reasoning for denying review of the ALJ's decision in this instance.  See <u>Jessica v. Saul</u>, No. 5:19-CV-1427 (DEP), 2021 WL 797069, at *8 (N.D.N.Y. Mar. 2, 2021); <u>Karen S. v. Comm'r of Soc. Sec.</u>, No. 3:20-CV-960 (CFH), 2022 WL 462086, at *9, n.9 (N.D.N.Y. Feb. 15, 2022) (acknowledging "Magistrate Judge Peebles' conclusion that the cases that have held that the Appeals Council must provide good reasons for rejecting a treating physician's opinion appear based on a misreading of the caselaw[]" but declining to reach the argument).  Accordingly, the Court finds no error in the Appeals Council's summary denial of review and remand is not warranted on this ground.[7]

Further, to the extent plaintiff argues that the newly submitted evidence would have changed the ALJ's decision, the Court will consider that evidence when reviewing the ALJ's decision under the substantial evidence standard.  See <u>Perez</u>, 77 F.3d at 45 ("Because the regulations require the Appeals Council to review the new evidence, this new evidence must be treated as part of the administrative record."); <u>Jessica W.</u>, 2021 WL 797069, at *9 ("[The p]laintiff's contention that the court has the authority to review the Appeals Council's conclusion regarding the new medical opinion is mistaken."); 20

---

[7] It is worth noting that the regulations definitions and explanations are not entirely clear, specifically where it states that a "decision means the decision . . . ."  20 C.F.R. § 416.1401.  This lack of clarity has seemingly lent itself to the confusion outlined in this Memorandum-Decision & Order and providing greater detail in the Appeals Council decision and/or amending the regulations would benefit judicial review.  See <u>Damato v. Sullivan</u>, 945 F.2d 982, 989, n.6 (7th Cir. 1991) ("While we hold that the Secretary's position was substantially justified, we neither encourage denying requests for review without articulating the reasoning nor approve of the same. In fact, in all fairness to the party appealing the ALJ's decision, the Appeals Council should articulate its reasoning when denying the request. Congress might consider requiring such articulation.").

C.F.R. § 416.1481 ("[T]he administrative law judge['s decision,] if the request for review is denied, is binding[.]").

## B. ALJ Decision

### 1. Duty to Develop the Record

Plaintiff argues that the ALJ erred in relying on "only opinions from non-examining sources[.]" Dkt. No. 14 at 17.  Plaintiff contends that the ALJ "violated his duty to develop [the record] by failing to obtain an opinion from an examining source, either a consultative examiner or a treating source." Id. at 18.  Specifically, plaintiff asserts that "[t]he fact that treating primary care physician Dr. Ray eventually completed a medical source statement suggests that she would have provided one sooner had the ALJ sought one[]" and that the ALJ should have obtained records from the Department of Social Services ("DSS") indicating the benefits plaintiff was receiving.  Id. at 18-19.

The Commissioner argues that "[s]ubstantial evidence, including the State agency prior administrative medical findings, supports the ALJ's decision and the ALJ was not required to further develop the record." Dkt. No. 15 at 16.  In particular, the Commissioner asserts that the state agency consultants had all of the relevant medical information needed to make their determinations and that plaintiff has not otherwise demonstrated that his conditions worsened after they rendered their determinations or that there is any evidence postdating their determinations that would change their findings.  See id. at 16-18.

The ALJ found plaintiff's "diabetes, obesity, osteoarthritis, and ankylosing spondylitis" to be severe impairments.  T. at 34.  The ALJ explained that "[t]he medical evidence does not support a finding of additional severe impairments."  Id.  The ALJ noted the objective evidence of record and stated that plaintiff had a "history positive for

hypertension, but care providers describe this condition to be well controlled with treatment[.] . . . [Plaintiff] has been treated for hyperlipidemia, hypomagnesemia and Gastroesophageal Reflux Disease (GERD), but these conditions likewise appear to be adequately controlled with prescription management and routine monitoring[.] . . . [Plaintiff] has no coronary artery disease[.]" Id. (citing T. at 412, 474, 782-83, 792). The ALJ expressly noted that "[w]ith no evidence from a medically acceptable source to establish significant limitations on [plaintiff's] ability to perform basic work activities, the listed conditions do not reach the threshold requirements for disability within the meaning of the Social Security Act." Id. However, the ALJ stated that he "nonetheless considered all of [plaintiff's] medically determinable impairments, including those that are not severe, when assessing [plaintiff's] residual functional capacity." Id.

In formulating plaintiff's RFC, the ALJ relied, in part, on the opinions of state agency medical consultants In Tack Seok, M.D., and Renato Abueg, M.D. See T. at 38. The ALJ explained that Dr. Seok "reviewed the evidence of record and concluded that [plaintiff] remains capable of performing light work, subject to some postural and environmental limitations. Dr. Seok further identified bilateral carpal tunnel syndrome, and opined that [plaintiff] is limited to frequent use of hand controls, and only occasional fine manipulation[.]" Id. (citing T. at 75-77, 85-87)). The ALJ noted that Dr. Abueg performed a subsequent review of the record "and generally agreed with Dr. Seok's assessment, except that Dr. Abueg identified greater limitations concerning [plaintiff's] ability to climb ladders[.]" Id. (citing T. at 98-100, 109-11). The ALJ explained that "[t]he state agency doctors are program knowledgeable experts. Their conclusions are generally consistent with the complete record, and therefore generally persuasive.

However, the objective evidence does not support the manipulation limitations the state agency doctors identified secondary to carpal tunnel syndrome." Id. The ALJ stated that "there are no treatment records for carpal tunnel syndrome during the period at issue. Examination of the claimant's hands and wrists returned negative results[.] . . . In the absence of supporting evidence, I have adopted lesser manipulative restrictions, to reflect the claimant's occasional joint pain from osteoarthrosis[.]" Id. (citing T. at 246, 556)).

The ALJ also extensively reviewed the evidence in the record and explained that plaintiff's "exertional capacity is reduced by his physical impairments, but not to the degree alleged." T. at 36. The ALJ noted that plaintiff reported joint pain in his knees, ankles, and hands, and "[w]hile earlier office notes described a generalized stiffness . . ., later records depicted a worsening" of his pain. Id. (citing T. at 341, 356, 741). The ALJ observed that plaintiff reported a burning pain in his left leg and down to his foot. See id. (citing T. at 766-67). Further, the records revealed that plaintiff "displayed a significantly reduced range of cervical and lumbar spine motion[.] . . . [Plaintiff's] lumbosacral spine was tender to palpation. Straight leg raise testing was positive on the left side, and clonus was seen in both knees and both ankle[.]" Id. (citing T. at 343, 770). As for clinical testing, the ALJ noted that plaintiff's "Schober's test returned positive results for ankylosing spondylitis[.] . . . Magnetic imaging of the claimant's spine indicated fusion of the spinal processes at the L2-L4 levels, as well as partial fusion of the sacroiliac joint. Mild facet degeneration was also evident[.]" Id. at 37 (citing T. at 341, 801-02). Further, "[c]are providers prescribed pain medications. The

claimant tolerated his prescription regimen well, but did not report any significant improvement in his symptoms[.]"  Id. (citing T. at 341)

The ALJ also reviewed the records relevant to plaintiff's diabetes and obesity. See T. at 37.  The ALJ explained that plaintiff has type 2 diabetes that requires long-acting and short-acting insulin therapy.  See id. (citing T. at 355, 512).  The ALJ stated that office treatment notes "include A1C scores of 13.4 . . . and 13.7. . .  [Plaintiff] has been treated for diabetic neuropathy, which causes pain and a chronic burning sensation in his feet.  Progress notes describe that this limits the claimant's ability to move and exercise[.]"  Id. (citing T. at 354, 767, 772).  The ALJ noted plaintiff's "history of abscesses . . . which have been slow to heal, requiring the claimant to make multiple visits to urgent care[.]"  Id. (citing T. at 386).  "In addition, [plaintiff] is morbidly obese[.] . . .  Although his weight varies, progress notes include Body Mass Index (BMI) measurements of 40 . . . and 43.65 . . . .  [Plaintiff's] obesity aggravates his skeletal pain, and further causes deconditioning and fatigue[.]"  Id. (citing T. at 341, 412,437, 728).

The ALJ determined that "[h]aving considered the record in the view most favorable to the claimant, I find it appropriate to limit him to the light exertional level, with additional postural and environmental restrictions.  As [plaintiff's] osteoarthrosis has sometimes caused hand pain . . . some manipulative limitations are also justified."  T. at 37 (citing T. at 346).  The ALJ concluded that greater restrictions were "not supported by the limited objective findings in the clinical record, or by indications that [plaintiff's] impairments respond to treatment."  Id.  Specifically, the ALJ noted that plaintiff's "treatment history does not indicate uncontrolled symptoms or inadequate relief of

symptoms secondary to skeletal pain or diabetes." Id.  The ALJ explained that plaintiff did not require any additional treatment methods beyond his medications.  See id.  Further, "[d]espite the degenerative changes in [plaintiff's] lumbar spine, imaging showed the vertebral body heights and disc spaces to be well maintained and stable over time, without significant spinal canal or foraminal stenosis[.] . . .  Care providers have observed no joint or muscle tenderness" and plaintiff had "a full range of motion in both the upper and lower extremities[.]" Id. (citing T. at 348, 476, 714, 729, 802).  The ALJ also noted that plaintiff had been diagnosed with mild proliferative diabetic retinopathy, but he reported no vision problems; he occasionally had very high blood sugar measurements, but he explained that he was not always compliant with his dietary restrictions and prescription regimen; and he "testified that he is now following his treatment regimen for faithfully and recent progress notes describe his diabetes as better controlled[.]" Id. (citing T. at 53, 340, 475, 733, 783).

The ALJ addressed plaintiff's "shoulder abscesses" and stated that they had "resolved[.]"  T. at 37 (citing T. at 505, 787).  Moreover, the ALJ stated that plaintiff's diabetic neuropathy improved with medication, his diabetic foot examination results were generally normal, there were "sometimes" satellite lesions on plaintiff's toes but no ulcerations or sensory deficits, he had no weakness in his thighs or ankles, and he was able to stand on his heels and toes.  See id. (citing T. at 517, 770, 783, 790).  Additionally, "[p]rogress notes identified no functional limitations concerning the claimant's activities of daily living[.] . . .  [Plaintiff's] doctors advised him to exercise for at least 30 minutes, at least 5 days a week[.] . . .  Taken together, these findings and

recommendations indicate that the claimant retains significant physical abilities." Id. at 37-38 (citing T. at 412, 474, 481, 775).

The record before the ALJ contained treatment notes from plaintiff's primary care provider Dr. Ray, which the ALJ cited in his recitation of the evidence. See T. at 36-37, 766-75, 779-94. During the hearing, plaintiff's representative did not object to the record and affirmatively stated that it was complete. See id. at 49. Following the ALJ's unfavorable decision in March 2020, plaintiff submitted a medical source statement and an updated treatment note from Dr. Ray to the Appeals Council. See id. at 12-23. Dr. Ray's opinion contains various formatting errors; therefore, the Court will only reiterate the portions of the opinion that it can conclusively discern. See id. at 12-14. Dr. Ray wrote that she had seen plaintiff every one to three months since 9/14/13 and he had "Ankylosing Spondylitis, Carpal Tunnel, Diabetes with Diabetic Retinopathy, Diabetic Neuropathy guarded – pt may not improve[.]" Id. at 12. Dr. Ray indicated that plaintiff can walk three city blocks without needing to rest or experiencing severe pain, can sit for two hours, and can "[s]tand/walk tess [sic] than . . . about 2 hours about at teest [sic] 6 hours[.]" Id. at 12-13. She also indicated that plaintiff would need to take fifteen unscheduled breaks in an eight-hour day, lasting five to ten minutes each. See id. at 13. Dr. Ray noted that plaintiff can never twist, stoop, bend, or crouch, but can occasionally squat and climb ladders. See id. at 14. Dr. Ray's treatment note that plaintiff submitted with Dr. Ray's opinion indicated that plaintiff's chief complaint was for a "problem evaluation for disability paperwork." Id. at 16. The note stated that plaintiff "presents today to have his disability paperwo[r]k completed. He feels that [he] is unable to work at [full capacity] because of his multiple problems[.]" Id. at 17. During

the visit, plaintiff's pain level was a five, but his examination was normal.  See id. at 20.
Dr. Ray assessed plaintiff for diabetes mellitus, secondary diabetes mellitus with
diabetic neuropathy, diabetes with diabetic retinopathy, ankylosing spondylitis, lumbar
disc degeneration, and bilateral carpal tunnel syndrome.  See id.  The care plan
indicated that plaintiff was to "take medications as prescribed and keep[] follow up
appointments[,]" check his blood sugar every day, "aim" for thirty minutes of daily
exercise, and to reduce simple sugars and starches in his diet.  Id. at 21-22.

The record indicates that plaintiff also sought disability paperwork from Dr. Ray in
2019.  See T. at 767.  A treatment note indicates that "[g]reater than 40 minutes spent
face-to-face and coordinating care today including filling out paperwork for disability[.]"
Id. at 771.  It is unclear what paperwork Dr. Ray "fill[ed] out" in 2019 but plaintiff testified
that he was receiving DDS benefits.  Id. at 771; 54.

"As a threshold question, the court must determine '[w]hether the ALJ has
satisfied [his or her] duty to develop the record.'"  Koehler v. Comm'r of Soc. Sec., No.
20-CV-7707 (JCM), 2022 WL 875380, at *9 (S.D.N.Y. Mar. 24, 2022) (quoting Smoker
v. Saul, 19-CV-1539 (AT) (JLC), 2020 WL 2212404, at *9 (S.D.N.Y. May 7, 2020)).
"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ
generally has an affirmative obligation to develop the administrative record."  Perez, 77
F.3d at 47 (citing Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d
Cir. 1982)).  "In this regard, the applicable regulations indicate that the Social Security
Administration will obtain additional information when insufficient information to make a
disability determination is available."  Carroll B. v. Comm'r of Soc. Sec., No. 1:19-CV-
686 (DJS), 2020 WL 4015263, at *3 (N.D.N.Y. July 16, 2020) (citing 20 C.F.R. §

404.1512(b)).  Further, "[i]t can be reversible error for an ALJ not to order a consultative examination when an examination is required for an informed decision."  Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 32 (2d Cir. 2013) (summary order) (citing Falcon v. Apfel, 88 F.Supp.2d 87, 91 (W.D.N.Y.2000)).  "A consultative examination is used to 'try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision' on the claim."  Id. (quoting 20 C.F.R. §§ 404.1519a(b), 416.919a(b)).

The ALJ's affirmative duty is not, however, limitless; rather, "where there are no 'obvious gaps' in the record, the ALJ is not required to seek additional information."  Gillard v. Colvin, 5:11-CV-1173 (GLS), 2013 WL 954909, at *2 (N.D.N.Y. Mar. 12, 2013) (citation omitted).  Moreover, an ALJ is entitled to rely on non-examining state agency consultants' opinions.  See Henry v. Astrue, 32 F. Supp. 3d 170, 181 (N.D.N.Y. 2012) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."); see also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record.").

Plaintiff has not identified any gaps in the record that made the record incomplete and triggered the ALJ's duty to further develop it.  See Dkt. No. 14 at 17-18.  Plaintiff's contentions that because "Dr. Ray eventually completed a medical source statement" and plaintiff testified she was receiving DSS benefits, the ALJ was required to further develop the record, is unpersuasive.  Neither assertion identifies a "clear gap[] in the

administrative record[]" as it related to plaintiff's functional limitations during the relevant time period.  Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999).  Nor has plaintiff identified any inconsistency or insufficiency in the evidence that required the ALJ to obtain a consultative examination.  See Dkt. No. 14 at 17-19; see also Tankisi, 521 F. App'x at 32.  Rather, the ALJ's reliance on the state agency consultants' opinions was appropriate as they reviewed all of the evidence in the record, and the ALJ not only relied on their opinions but on the entirety of the record including plaintiff's subjective complaints.  See Michael V. v. Comm'r of Soc. Sec., No. 6:18-CV-0481 (GTS), 2019 WL 4276722, at *5 (N.D.N.Y. Sept. 10, 2019) ("The RFC's physical limitations are supported by the medical opinion of [the consultative examiner], medical records, and [the p]laintiff's reports[.]").  The ALJ extensively reviewed plaintiff's medical records which indicated that his physical functioning was reduced by his back, neck, hand, and joint pain; limited range of motion in, and mild degeneration of, his spine; and his diabetes and obesity.  See T. at 36-37.

The record contains hundreds of treatment notes from Dr. Ray.  See T. at 485-546-680, 766-94.  Dr. Ray ordered an MRI of plaintiff's lumbar spine which revealed that plaintiff had "[m]ild facet degenerative changes . . . at the lower lumbar levels without significant spinal canal or neural foraminal narrowing."  T. at 801.  Dr. Ray's treatment notes indicated that on examination, plaintiff was not in acute distress, had tenderness on palpation of the spine, had normal movement of his extremities, and could walk on his heels and toes.  See id. at 476, 482, 487-88, 519, 573, 594, 606-07, 632-33, 652-63, 667, 673, 769-70, 782, 789.  His care plan was to continue taking his blood pressure and diabetes medications, reduce his salt and caffeine intake, monitor his blood sugar,

and exercise daily.  See id. at 490-91, 582-83, 654-55, 668, 772-75, 784-85, 792. Plaintiff had occasional pain in his shoulder and wrists, but his range of motion was normal and there was "no instability" or "weakness." Id. at 556, 580.  Plaintiff had satellite lesions on toes and medial dorsal aspect of his feet, but there were no resulting physical limitations.  See id. at 37, 790-91.  Moreover, during various urgent care visits, plaintiff was not in acute distress and had full range of motion in his extremities.  See id. at 729, 737, 753.  Plaintiff developed abscesses, but they did not cause any functional limitations.  See id. at 726, 737, 745, 749.  Plaintiff had "erythema surrounding the left knee" but "[m]anipulation of the knee joint itself does not reproduce discomfort." Id. at 741; 733.  Plaintiff does not identify a gap in these records; rather, the record contained enough information for the ALJ to make his decision such that he had no duty to contact Dr. Ray to obtain a medical source statement or further develop the record.  See Amy C. v. Comm'r of Soc. Sec., No. 3:20-CV-0546 (ML), 2021 WL 1758764, at *7 (N.D.N.Y. May 4, 2021) (quoting 20 C.F.R. §§ 404.1513(e), 416.913(e)) ("The evidence in a claimant's case record must be 'complete and detailed enough to allow [the Commissioner] to make a determination or decision about whether [a plaintiff is] disabled[.]'").

Plaintiff contends that the ALJ was required to obtain plaintiff's DSS records because plaintiff testified that he was receiving DSS benefits and "Dr. Ray seemingly indicated to [social services] that [p]laintiff could not work at least for a 1-to-3-month period." Dkt. No. 14 at 19-20; see T. at 53-54, 529.  "[A] decision by any other governmental agency or a nongovernmental entity about whether [a plaintiff is] disabled . . . or entitled to any benefits is based on its rules, [and] it is not binding on" the ALJ.

20 C.F.R. § 404.1504. Further, "[u]nless an impairment is expected to result in death, the disability must have lasted or must be expected to last for a continuous period of at least twelve months to comply with the Act's duration requirement." Meyers v. Astrue, 681 F. Supp. 2d 388, 399 (W.D.N.Y. 2010) (citing 20 C.F.R. § 404.1509). Therefore, to the extent plaintiff was receiving disability benefits from the Department of Social Services, that decision is not binding on the ALJ, and Dr. Ray's notation that plaintiff was unable to work for one to three months does not satisfy the SSA's duration requirement. See 20 C.F.R. §§ 404.1504, 404.1509. Importantly, plaintiff does not explain what functional limitations the DSS determination would identify that the ALJ had not already considered. See generally Dkt. No. 14. As the ALJ had enough information to make the disability determination such that there was no gap in the record that he was required to fill, and plaintiff's representative affirmatively stated that the record was complete, remand is not warranted on this ground. See David B. C. v. Comm'r of Soc. Sec., No. 1:20-CV-01136 (FJS/TWD), 2021 WL 5769567, at *7 (N.D.N.Y. Dec. 6, 2021), report and recommendation adopted, 2022 WL 267348 (N.D.N.Y. Jan. 28, 2022) ("[A]lthough there is no medical source statement opinion from any of [the p]laintiff's treating sources, the Court finds the ALJ was not required to develop the record further because the evidence of record was sufficient for her to render a decision and contained no obvious gaps . . .[, p]laintiff did not object to the contents of the record. . .[and p]laintiff's counsel affirmatively stated the record was complete.").

**2. Medically-Determinable Impairment**

Plaintiff argues that "[t]he ALJ erred at Step Two because he did not consider whether [p]laintiff's abscesses were a medically determinable impairment."  Dkt. No. 14 at 21.  Plaintiff asserts that "[t]he abscesses significantly limited [p]laintiff's ability to do basic work activities, as he needed frequent treatment for them, including 10 debridement procedures during the relevant period[,]" he had "a 6-day hospitalization[]" and he "had to have specialists in his home help him change his bandages and administer antibiotics by IV, and he had a wound VAC."[8]  Id. at 22.  The Commissioner argues that plaintiff cannot show "prejudicial error resulting from the ALJ['s] consideration of his chronic abscesses" because the ALJ considered plaintiff's history of abscesses and the state agency medical consultants "specifically noted" plaintiff's abscesses.  Dkt. No. 15 at 19.

The ALJ is required to "consider all of [a plaintiff's] medically determinable impairments of which [he or she is] aware, including [the] medically determinable impairments that are not 'severe[.]'"  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).  To qualify as a medically-determinable impairment, it "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.  Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source."  20 C.F.R. § 416.921.  Whether something is considered a medically-determinable impairment is influential to the remainder of the decision because "only

---

[8] "Vacuum-assisted closure of a wound is a type of therapy to help wounds heal. It's also known as wound VAC.  During the treatment, a device decreases air pressure on the wound.  This can help the wound heal more quickly."  Vacuum-Assisted Closure of a Wound, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/vacuumassisted-closure-of-a-wound (last visited April 12, 2022).

28

medical determinable impairments can be considered severe or non-severe, [and] only limitations stemming from severe and non-severe impairments are considered in formulating an RFC." Talbot v. Colvin, No. 3:13-CV-1249 (GTS), 2015 WL 5512039, at *6 (N.D.N.Y. Sept. 15, 2015).  A harmless error analysis does not ordinarily apply to an ALJ's failure to find a condition to be a medically-determinable impairment.  See John B. v. Kijakazi, No. 1:20-CV-1310 (ATB), 2022 WL 813829, at *5 (N.D.N.Y. Mar. 16, 2022) ("Where an impairment is excluded at step two and the ALJ fails to account for functional limitations associated with the impairment in determining the claimant's RFC, remand for further proceedings is appropriate.") (collecting cases explaining the same).

In plaintiff's application for benefits he listed the following medical conditions as those that limit his ability to work: diabetes, high blood pressure, pain in legs and feet, heart impairments, "shoulder wound (sore/cyst) not healing[,]" and arthritis.  T. at 289. The ALJ found plaintiff's diabetes, obesity, osteoarthritis, and ankylosing spondylitis to be severe impairments.  See id. at 34.  He stated that the record also evidenced a history of hypertension but that the record did not establish that it was severe.  See id. The ALJ also expressly noted that the record referenced carpal tunnel syndrome but that "[d]ue to a lack of objective medical evidence, the claimant's self-reported carpal tunnel syndrome does not reach the threshold of a medically determinable impairment." Id.  The ALJ did not reference plaintiff's abscesses at step two of the decision but stated that he "nonetheless considered all of [plaintiff's] medically determinable impairments, including those that are not severe, when assessing [plaintiff's] residual functional capacity."  Id.  As a part of the ALJ's RFC determination, he noted that plaintiff "has a history of abscesses . . . which have been slow to heal, requiring [plaintiff] to make

multiple visits to urgent care[.]" Id. at 37 (citing T. at 386, 466).  The ALJ later noted that plaintiff's "shoulder abscesses resolved[.]" Id. (citing T. at 505, 787).  The ALJ relied on the state agency consultants' opinions and in explaining their recommended limitations, they stated that a follow-up treatment note indicated that plaintiff had "been getting boils around and on his left shoulder.  He states that he has been following with wound care . . . [the] shoulder abscess [is] poor healing[.]" T. at 77, 99-100; 38.

"[A]dministrative legal error is harmless when a reviewing court confidently concludes that the same result would have been reached had the error not occurred." Showers v. Colvin, No. 3:13-CV-1147 (GLS), 2015 WL 1383819, at *8 (N.D.N.Y. Mar. 25, 2015) (explaining that the harmless error analysis was inapplicable at the medically-determinable stage because the ALJ found that the plaintiff's "claimed personality disorder, depression and anxiety were not medically-determinable abnormalities rising to the level of impairments, functional limitations attributable thereto were never considered at subsequent evaluative steps or when formulating [the plaintiff's] residual functional capacity."); see also John B. v. Kijakazi, No. 1:20-CV-1310 (ATB), 2022 WL 813829, at *5 (N.D.N.Y. Mar. 16, 2022) (finding error in the ALJ's "failure to even consider, much less identify, [the] plaintiff's [chronic kidney disease] as a medically determinable impairment"); Booker v. Astrue, No. 1:07-CV-646 (GLS), 2011 WL 3735808, at *5 (N.D.N.Y. Aug. 24, 2011) ("[T]he ALJ's decision does not contain a specific finding with regard to [the plaintiff's] left foot at step two or any time thereafter. This is error significant enough to defeat meaningful review at step two and, consequently, each successive step.").

The ALJ explained that he "considered all of [plaintiff's] medically determinable impairments, including those that are not severe, when assessing" plaintiff's RFC.  T. at 34.  Then, when assessing plaintiff's RFC, he noted plaintiff's history of abscesses, the resulting urgent care visits, and the resolution of his shoulder abscess, citing to urgent care and Dr. Ray's records.  See id. at 37 (citing T. at 386, 466, 505, 787).  One of the treatment notes that the ALJ cites to support the conclusion that plaintiff's shoulder abscess had resolved, was from October 2018 in which Dr. Ray indicated that plaintiff's "cellulitis of his back is completely resolved."  T. at 505; 37.  However, as plaintiff explains and relies on, the remainder of this treatment note explains that plaintiff still had "a substantial open wound on his back, and is being required to wear his wound VAC daily except for this weekend.  He currently has a wound covered with a sterile bandage."  Id. at 505.  Dr. Ray also explained that plaintiff "may have a wound vac for another 4 months. His surgery date was 9/5/18 for debridement of his back wound. With the wound vac, it is difficult for him to exercise. . . .  [Plaintiff] ended up in the hospital from severe abscesses and cellulitis . . . ."  Id. at 502; see Dkt. No. 14 at 21-22.  Dr. Ray noted that "[t]he wound VAC is very large and cumbersome, and [plaintiff] probably could not work wearing this wound VAC."  T. at 502.  However, as the ALJ cites, in a June 2019 treatment note, Dr. Ray stated that plaintiff "reports open wounds on his left shoulder which was treated by home wound care – he reports it has been healed since February 2019."  Id. at 787.  As the ALJ explicitly considered plaintiff's "shoulder abscess" in her RFC determination, the ALJ's lack of discussion about the condition at step two is harmless error.

Further, plaintiff argues that plaintiff's abscesses are disabling and "work-preclusive" because they would cause him to miss too many days of work where he "was hospitalized for 6 days, then had a wound VAC for a period of almost 2 months," but the ALJ's decision to not include any limitations in plaintiff's RFC based on his abscesses is supported by substantial evidence.  Dkt. No. 14 at 23; see Monroe v. Colvin, No. 3:14-CV-01035 (MAD/ATB), 2016 WL 552364, at *2 (N.D.N.Y. Feb. 10, 2016), aff'd, 676 F. App'x 5 (2d Cir. 2017) (citation omitted) ("If supported by substantial evidence, the Commissioner's finding must be sustained 'even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'").  As the ALJ explained, as of June 2019, plaintiff's shoulder abscesses had resolved.  See T. at 787.  The record indicates that in February 2019, plaintiff had a "non healing abscess on his back[]" or a "boil[.]"  Id. at 358-60.  By March 2019, plaintiff's abscesses had healed.  See id. at 354-55.  In October 2019, plaintiff again had a "boil" and was assessed for "[c]ellulitis of trunk" and he was prescribed a new medication.  Id. at 725.  Although it appears that plaintiff's abscesses recurred after June 2019, there is nothing in the record to indicate that they functionally limited plaintiff beyond the "almost 2 months" he had to wear a wound VAC in 2018.  Dkt. No. 14 at 23.  Although plaintiff asserts that he would be unable to work due to recurrent absences from work, there is no medical opinion to support that conclusion.  See T. at 86-87, 109-11.  Specifically, Dr. Ray did not list plaintiff's abscesses as one of his impairments or indicate that plaintiff would be absent from work for any reason.  See T. at 12.  As the ALJ considered plaintiff's abscesses and plaintiff has failed to meet his burden of proving that they result in

disabling limitations, remand is not warranted on this ground.  See Searles v. Comm'r of Soc. Sec., No. 1:14-CV-1124 (TJM/TWD), 2015 WL 9582726, at *9 (N.D.N.Y. Nov. 30, 2015), report and recommendation adopted, 2015 WL 9581830 (N.D.N.Y. Dec. 30, 2015) (affirming the ALJ's decision where "[t]here [wa]s nothing in the record showing [the p]laintiff had any functional limitation relating to the buttock abscess.").

### 3. Listings Analysis

Plaintiff contends that "the ALJ erred by not evaluating whether [p]laintiff met a Listing for his skin disorder."  Dkt. No. 14 at 24.  Specifically, plaintiff asserts that his abscesses meet Listings 8.04 and 8.05.  See id. at 23-24.  The Commissioner argues that the ALJ sufficiently considered whether plaintiff's abscesses satisfied Listing 8.00 for "skin disorders" and that regardless, plaintiff has failed to meet his burden of proof that his conditions meets a Listing.  Dkt. No. 15 at 21-22.

"Plaintiff has the burden of proof at step three to show that [his or] her impairments meet or medically equal a Listing."  Rockwood v. Astrue, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009) (citing Naegele v. Barnhart, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006)).  "To meet a Listing, [the p]laintiff must show that [his or] her medically determinable impairment satisfies all of the specified criteria in a Listing."  Id.; see 20 C.F.R. § 416.925(d).  "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify."  Id. (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990)) (additional citation omitted).

"At step three, the ALJ must set forth sufficient factual or legal support for his findings."  Vann v. Comm'r of Soc. Sec., No. 7:15-CV-0094, 2016 WL 3526076, at *3 (N.D.N.Y. May 27, 2016), report and recommendation adopted, WL 3546362 (N.D.N.Y. June 23, 2016); see also Larson v. Comm'r of Soc. Sec., No. 19-CV-0116 (MWP), 2020

33

WL 5018331, at *7 (W.D.N.Y. Aug. 25, 2020) (quoting Kuleszo v. Barnhart, 232 F.

Supp. 2d 44, 52 (W.D.N.Y. 2002)) ("Where the claimant's symptoms, as described in

the medical evidence, appear to match those described in the Listings, the ALJ must

provide an explanation as to why the claimant failed to meet or equal the Listings.").

"Setting forth a single sentence is insufficient."  Hamedallah ex rel. E.B. v. Astrue, 876

F. Supp. 2d 133, 142 (N.D.N.Y. 2012) (citing Martinbeault v. Astrue, No. 1:07-CV-1297

(DNH), 2009 WL 5030789, at *6 (N.D.N.Y. Dec. 14, 2009)).  "[H]owever, 'the court may

'look to other portions of the ALJ's decision and to clearly credible evidence in finding

that h[er] determination was supported by substantial evidence.'"  Larson, 2020 WL

5018331, at *7 (quoting Hall v. Berryhill, 15-CV-00619F, 2018 WL 1071508, *3

(W.D.N.Y. 2018)). "[A] court may uphold an ALJ's finding that a claimant does not meet

a Listing even where the decision lacks an express rationale for that finding if the

determination is supported by substantial evidence."  Andrea K. v. Comm'r of Soc. Sec.,

No. 1:18-CV-1448 (CFH), 2021 WL 1224049, at *6 (N.D.N.Y. Mar. 31, 2021) (citations

omitted).

> To meet Listing 8.04, plaintiff must have "[c]hronic infections of the skin or

mucous membranes, with extensive fungating or extensive ulcerating skin lesions that

persist for at least 3 months despite continuing treatment as prescribed."  20 C.F.R. Part

404, Subpart P, App'x 1, § 8.04 (effective Mar. 14, 2018 to Apr. 1, 2021) (emphasis

added); see Riddick v. Saul, No. 20-CV-5396 (AMD), 2022 WL 784722, at *5 (E.D.N.Y.

Mar. 15, 2022) ("A court can only review the Commissioner's decision using the rules in

effect at the time the decision was made.")  Listing 8.05 applies to "[d]ermatitis (for

example, psoriasis, dyshidrosis, atopic dermatitis, exfoliative dermatitis, allergic contact

dermatitis), with <u>extensive</u> skin lesions that persist for at least 3 months despite continuing treatment as prescribed."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 8.05 (emphasis added).  Both Listings require plaintiff to have "[e]xtensive skin lesions" which must "involve multiple body sites or critical body areas," and "result in a very serious limitation."  <u>Id.</u> § 8.00(C)(1).  A "very serious limitation" includes but is not limited to skin lesions that "very seriously limit" the "use of more than one extremity[,]" the "ability to do fine and gross motor movements[,]" or the "ability to ambulate."  <u>Id.</u> § 8.00(C).  Further, if there is no "continuing treatment as prescribed, if [] treatment has not lasted for at least 3 months, or if [there are no] extensive skin lesions that have persisted for at least 3 months," the impairment will not meet Listing 8.04 or 8.05.  <u>Id.</u> § 8.00(H)(1).  "[P]ersist" "mean[s] that the longitudinal clinical record shows that, with few exceptions, your lesions have been at the level specified in the listing."  <u>Id.</u> § 8.00(G).

As plaintiff states, the record is replete with references to his abscesses or "boils" including records from the Center for Wound Healing at Oswego Health pertaining solely to his abscesses.  Dkt. No. 14 at 21, 24-25; <u>see</u> T. at 354-469.  There is evidence of plaintiff's abscesses spanning from February 5, 2018, to October 7, 2019.  <u>See</u> T. at 725, 748.  Also, as plaintiff explains, he was seen in Urgent Care on numerous occasions because of the abscesses, underwent surgical debridement of a back abscess, and subsequently needed to wear a wound VAC and undergo homecare.  <u>See</u> <u>id.</u> at 410-37, 466-49, 502; <u>see</u> Dkt. No. 14 at 21-22.  Plaintiff contends that his "chronic abscesses spanned a period of longer than 3 months, and one abscess in particular persisted for 3 months despite extensive treatment, including hospitalization."  Dkt. No. 14 at 24.  On August 14, 2018, plaintiff presented for a "boil on [his] shoulder[.]"  T. at

466.  Plaintiff "state[d] that [it] ha[d] been present for 1 week."  Id.  Plaintiff underwent

"debridement of his back wound" on September 5, 2018.  See id. at 443-44, 502.  On

September 21, 2018, Dr. Ray noted that plaintiff's "cellulitis is completely resolved.  He

still has an open wound on his left upper back which is covered by a wound VAC."  Id.

at 512.  By October 2018, Dr. Ray indicated that it "appear[ed] to be healing" since the

last time she saw him.  Id. at 504.  The Center for Wound Healing also noted that the

abscess was "stable."  Id. at 395.  On November 7, 2018, the "back wound [w]as []

closed and healing nicely."  Id. at 390.  It, therefore, appears that plaintiff's back

abscess lasted for approximately three months.  See id. at 390, 466.  Because the

abscess "appear[s] to match those described in the Listings, the ALJ" should have more

thoroughly explained why plaintiff's abscesses did not meet the Listings for skin

disorders.  Hamedallah ex rel. E.B., 876 F. Supp. 2d at 142.  However, the ALJ's failure

to explain his rationale is harmless error because there is substantial evidence

supporting the ALJ's conclusion that plaintiff's abscesses do not meet the § 8.00

Listings for skin disorders.  See Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 112

(2d Cir. 2010) (quoting Berry, 675 F.2d at 469) ("Although we have cautioned that an

ALJ 'should set forth a sufficient rationale in support of his decision to find or not to find

a listed impairment,' the absence of an express rationale for an ALJ's conclusions does

not prevent us from upholding them so long as we are 'able to look to other portions of

the ALJ's decision and to clearly credible evidence in finding that his determination was

supported by substantial evidence.'").

　　　　To satisfy the Listings, the abscesses must "persist" for those three months,

meaning that they maintained, "with few exceptions," the level of severity required for

36

"[e]xtensive skin lesions."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 8.00(C), (H).

Throughout treatment for plaintiff's abscesses, he had a normal range of motion and

was not in acute distress.  See T. at 461, 467, 511.  There is no evidence that the

abscesses "very seriously limit[ed]" his ability to use more than one extremity, do fine

and gross motor movements, or ambulate.  20 C.F.R. § Pt. 404, Subpt. P, App. 1, §

8.00(C).  Plaintiff testified that he "had like a cyst on my back last year and it took me

over a year to heal from that due to my diabetes because it was so out of control."  T. at

52.  Plaintiff did not testify to any limiting effects from his "cyst[.]"  Id.  As the ALJ

correctly explained in various parts of his decision, plaintiff's abscesses were slow to

heal, requiring him to make multiple urgent care visits, but he "displayed a full range of

motion in both the upper and lower extremities, his shoulder abscess resolved, plaintiff

had no weakness in his thighs and ankles, he could stand on his heels and toes, and

"[e]xamination of [his] hands and wrists returned negative results[.]"  Id. at 37-38.  The

ALJ also relied on the state agency medical consultants' opinions in which both noted

that plaintiff reported no musculoskeletal pain and had "normal movements in all

extremities."  Id. at 77, 99; see Vann v. Comm'r of Soc. Sec., No. 7:15-CV-0094 (WBC),

2016 WL 3526076, at *4-5 (N.D.N.Y. May 27, 2016), report and recommendation

adopted, 2016 WL 3546362 (N.D.N.Y. June 23, 2016) ("The ALJ's discussion and

analysis, at steps two and four, clearly indicated that the ALJ reviewed all of the medical

evidence in the record and specifically cited evidence that supported his step three

determination that [the p]laintiff did not meet or equal Listing § 1.04.").  As there is no

evidence that plaintiff's abscesses "very seriously limited" his abilities, regardless of

whether his shoulder abscess lasted for three months, they do not meet all of the

criteria for Listings 8.04 or 8.05, and the ALJ's decision to find that plaintiff did not meet the skin disorder Listings is supported by substantial evidence.  See 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 8.00(C); see Salmini, 371 F. App'x at 112-13 ("[A]lthough the ALJ might have been more specific in detailing the reasons for concluding that plaintiff's condition did not satisfy a listed impairment, other portions of the ALJ's detailed decision, along with [the] plaintiff's own testimony, demonstrate that substantial evidence supports this part of the ALJ's determination.").  Accordingly, remand is not warranted on this ground.

### VI. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED**, that the Commissioner's cross-motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**, and plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: May 2, 2022
     Albany, New York

Christian F. Hummel
U.S. Magistrate Judge